## MILLER v. MAGEE.

*(Supreme Court, General Term, Third Department.   July 2, 1888.)*

1. POWERS—NOTE EXECUTED UNDER—PAYMENT TO BAR LIMITATION.
   A power of attorney given in 1869, authorizing the making and giving of a promissory note, does not authorize a payment of one dollar on the note in 1881, to bar the running of the statute of limitations.

2. LIMITATION OF ACTIONS—PART PAYMENT—AUTHORITY TO MAKE.
   A letter, in 1878, referring to certain payments which should have been made by a third person on defendant's note, does not prove that the third person was authorized, in 1881, to make a payment to revive defendant's liability on the note.

3. SAME—ACKNOWLEDGMENT—LIFE INSURANCE POLICY, TO SECURE.
   Defendant, in 1866, assigned plaintiff a life insurance policy to secure his notes held by plaintiff, and regularly thereafter paid the premiums, sending the receipts to plaintiff annually.   *Held* that, as the giving the security was a renewal of the debt for six years from the time it was given, the delivery of the renewal certificates had the same effect, and was an unequivocal acknowledgment of the debt, and promise to pay it.[1]

4. PLEDGE—LIFE INSURANCE POLICY—SALE.
   Where a policy of life insurance is assigned to a holder of a note for security, he cannot sell the same, but can reimburse himself, when it becomes due, for whatever balance may be unpaid on the note.[2]

Appeal from circuit court, Albany county; EDWARDS, Justice.

Martin M. Miller sued Irving Magee on three promissory notes.   The case was heard by the court without a jury, and the following opinion rendered:

"EDWARDS, J.   This action is brought on three promissory notes: one made by Abram Magee, Arthur Magee, and Irving Magee, dated April 1, 1869, payable, one year after date, to M. M. Miller, or bearer, for $1,200, with interest; one made by Abram Magee and Irving Magee, dated January 11, 1866, payable, one year after date, to Martin M. Miller, or bearer, for $1,000, with interest; the other made by Silvernail & Magee, Adam Silvernail and William E. Magee, dated February 14, 1867, payable on April 1, 1868, to Martin M. Miller, or bearer, for $1,700, with interest.   On the last-named note the defendant was not originally liable as maker, or otherwise; and, having never since promised in writing to pay it, it is clear that he cannot be personally charged with its payment.   As to whether or not the plaintiff can hold the life insurance policy hereinafter mentioned as security for the payment of this note, it is not necessary now to decide.   The interest on the other two notes was regularly paid by Abram Magee, one of the makers, to April 1, 1876, and he also paid one dollar of principal on each of them on July 9, 1881.   More than six years having elapsed between the maturity of each of these notes and the commencement of the action, on March 17, 1887, the defense of the statute of limitations, interposed in the answer of the defendant, will defeat the plaintiff's recovery, unless the defendant has done something which will arrest the operation of that statute.   The plaintiff contends that, in making the payment of one dollar on each note, the only payment which could save it from the statute, Abram was the agent of the defendant.   But there is no evidence of such agency.   It is well settled that agency cannot be implied from their relation to the note.   It must be established as a fact by plain and clear proof.   The plaintiff's evidence of the agency of Abram to make these payments for defendant are Exhibits D and G.   The former is a power of attorney by defendant to Abram, dated March 23, 1869, authorizing him to make and give a promissory note.   Its effect must be limited to the special purpose for which it was given.   It is impossible to spell out any authority in this to make the dollar payments of July 9, 1881.   Exhibit G is a

---

[1]As to what is a sufficient acknowledgment or new promise to stop the running of the statute of limitations, see Pracht v. McNee, (Kan.) 18 Pac. Rep. 925, and note.

[2]See as to the sale of a pledge by the pledgee, Downer v. Whittier, (Mass.) 11 N. E. Rep. 585, and note.

letter from defendant to plaintiff, dated January 11, 1878, and the only part of it referring to any payments by Abram on the notes is as follows: 'I have before told you that I directed him [Abram] to use what was due me in father's estate for paying the notes that had my name to them, which he did not do. I do not know whose fault it is. It surely isn't mine. But that can't be changed now.' This clearly refers to some payments which were to have been made in the past, and not to any payment of one dollar to be made two and a half years thereafter for the purpose of reviving liabilities on the notes. It does not prove that this particular payment was authorized by defendant. 'A payment which is to operate as an acknowledgment must be made by the debtor or his authorized agent; that is, an agent having authority to make a new promise, or to perform for the party the very act which is to be the evidence of a new promise.' *Littlefield* v. *Littlefield*, 91 N. Y. 203. In respect to this letter of January 11, 1878, and also defendant's letter of May 25, 1880, to the plaintiff, it is sufficient to say that, assuming them to contain such admissions of defendant's indebtedness on the notes that a willingness or promise to pay may be fairly implied, as is claimed by plaintiff's counsel, more than six years thereafter elapsed before the commencement of the action, and such promise is therefore of no avail. The claim that defendant's expressions of opinion in his letter of May 25, 1880, in respect to the legal effect of his acts on the statute of limitations, estop him from interposing the statute, is clearly untenable.

"Another question in the case relates to the effect of the assignment of the life insurance policy. By an instrument in writing dated September 21, 1869, the defendant assigned to the plaintiff a policy issued by the Connecticut Mutual Life Insurance Company, dated April 27, 1866, on the life of defendant, whereby, in consideration of the annual premiums to be paid, the company agreed to pay $2,500 to the personal representatives or assigns of the defendant 90 days after proof of his death. Although the language of this assignment is somewhat obscure, I think, when read in the light of the evidence, the policy was assigned as further security to the notes in suit. The premiums on this policy have been regularly paid by the defendant to the present time, and these renewal receipts therefor, down to and including the one for 1885, 16 in number, have been annually sent by the defendant to the plaintiff, to whom the policy also was delivered by the defendant at the time of the assignment. I think this is such an acknowledgment of defendant's indebtedness to plaintiff on the first two named notes as will save them from the operation of the statutes. Originally, any admission of a debt which implied a willingness or promise to pay it revived the debt. To close the door against frequent perjury in such cases, a statute was enacted requiring that the acknowledgment or promise to continue or revive a debt should be in writing, but this statute, of which section 395 of the Code is a substantial re-enactment, especially provided that it should not alter the effect of a payment of principal or interest. The reason for this exception in respect to a payment is that payment of a part of a debt is such an unequivocal acknowledgment of the debt, and promise to pay the remainder, that it is not subject to the misconstruction of mere words prolific of the perjury which the statute was designed to prevent. The payment is an acknowledgment, or new promise, supported by the original consideration, which revives the debt from the time of such payment. The effect of a part payment to renew the debt results solely from the decisions of the courts, and depends wholly upon the reasons of those decisions. *Harper* v. *Fairley*, 53 N. Y. 444. The delivery by a debtor to a creditor of the note, bill, or other obligations of a third person as collateral security is as much of an acknowledgment as a payment is, and is equally effectual to suspend the operation of the statute of limitations. *Smith* v. *Ryan*, 7 Jones & S. 489, affirmed 66 N. Y. 352; *Harper* v. *Fairley*, 53 N. Y. 442; *Acker* v. *Acker*, 81 N. Y. 143. The reason is that 'the act is of the

same character, and equally unequivocal, as payment in fact.' *Smith* v. *Ryan*, 66 N. Y. 355. The policy of insurance is not a contract of indemnity, but an absolute obligation on the part of the insurers to pay $2,500 on the happening of an event certain, viz., the death of the insured, providing, however, the premiums are annually paid. The delivery of this policy by defendant to plaintiff as collateral security was a renewal of the debt for six years from the time of the delivery, which was in law a new promise. *Smith* v. *Ryan*, and other cases, *supra*. We are of the opinion that, within the reasons of the rule, the delivery of the renewal certificates by the defendant to the plaintiff had the same effect upon the statute of limitations as the delivery of the policy. The premiums have been regularly paid by defendant to the present time, and the receipts or certificates therefor have been regularly delivered by him to the plaintiff down to and including the one for 1885. One of the express conditions of the policy is that it shall cease by reason of the non-payment of the premiums in any year, and it further provides that the only evidence to the holder of the policy of the payment of the premium is a certificate of renewal, signed by the secretary of the company. Those certificates of renewal state that the policy is continued in force for one year from the date thereof. The payment of those premiums by the defendant was for the benefit of the plaintiff, and the delivery of the renewal certificates was as unequivocal an acknowledgment of the indebtedness and promise to pay as was the delivery of the policy thereof. The only theory upon which the delivery of the policy saves the operation of the statutes is that the debtor, by such an act, acknowledges the debt, and evinces a willingness to pay. What other possible significance can attach to the act of delivering the renewal certificates? The one is as clearly within the reason of the rule as the other. If it were necessary to seek further for the debtor's purpose, some light would be shed upon it by his letter of May 25, 1880, to plaintiff, wherein he says: ' I think, though, that my keeping up the insurance as your security would hold me on the notes all right.' For these reasons we are of the opinion that the two notes first mentioned were subsisting liabilities of defendant when this action was commenced, and that the plaintiff is entitled to judgment against him for the amounts unpaid thereon."

"But the plaintiff also asks that an absolute assignment of the policy may be decreed, and that he may be authorized to sell and dispose of it. We know of no such power or practice, and have not been referred by him to any. If such power existed, the pleadings, parties, and proofs herein are insufficient to warrant its exercise. The insurance policy is a chose in action. It is of the same nature as a note, bond, or obligation to pay money not yet matured. The transfer of such securities as collateral to a debt is a pledge; and, unless there is express authority given by the pledgeor so to do, the pledgee cannot sell them, but must resort to their collection when due. That is the import of the contract between pledgeor and pledgee. *Wheeler* v. *Newbould*, 16 N. Y 392; *Haskins* v. *Kelly*, 1 Rob. (N. Y.) 160. The contract between defendant and plaintiff, as the law will apply, was that the plaintiff should reimburse himself out of the proceeds of the policy, when due, so far as the debt which it was intended to secure should then remain unpaid. Besides, this fully protects the plaintiff,—at least as fully as it was ever designed to. He cannot obtain any greater rights than the contract gave to him. He can continue to hold the policy as security. If the defendant neglects or refuses to pay the premiums, the plaintiff can do so. The money judgment obtained by plaintiff against defendant herein may be collected. There is no evidence that defendant is insolvent. It may be that plaintiff's debt against the defendant will be barred by the statute of limitations when the policy matures, but the plaintiff can still collect the amount due on the policy. Notwithstanding the statute has run against the debt, the defendant's representatives cannot receive the policy back from the plaintiff without paying the debt

which the policy was given to secure. *Jones* v. *Bank,* 6 Rob. (N. Y.) 162. The plaintiff should have judgment for amount of the two notes, with costs."

Argued before LEARNED, P. J., and LANDON and INGALLS, JJ.

*John Cadman,* for appellant. *E. R. Harder,* for respondent.

INGALLS, J. An examination of this case has led us to the conclusion that the same was correctly decided at the circuit, both in regard to the merits and the law applied thereto. The opinion of the learned justice, delivered upon the decision, seems to contain all which is necessary to be said in disposing of the appeal. The judgment should be affirmed, with costs.