# Cases

# FOURTH DEPARTMENT

AT

## GENERAL TERM,

### September, 1893.

---

GILBERT MURDOCK, as Administrator, etc., et al., Respondents, *v.* HARRIET ROBINSON et al., Appellants.

*Statute of Limitations — payment upon a recorded mortgage by the owner of a portion of the premises — effect thereof upon a purchaser of the remaining portion.*

A payment upon a recorded mortgage, made by the heirs of two joint and several mortgagors, while in the possession of the part of the mortgaged premises inherited by them from the mortgagors, keeps it alive as to the rest of the mortgaged land held by one acquiring title thereto by grant from one of the mortgagors, and from the heirs of another, although such grants were with warranty and for a valuable consideration, and no reference to the mortgage was contained in the deeds conveying the premises. (MERWIN, J., dissenting.)

APPEAL by the defendants, Harriet Robinson, Mary Lamb and Clarissa Waterman, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Otsego on the 9th day of March, 1893, with notice of an intention to bring up for review on such appeal an order of the Supreme Court substituting Gilbert Murdock as administrator, etc., of Harvey Murdock, deceased, as plaintiff in the place of Harvey Murdock, deceased, entered in the office of the clerk of Otsego county on the 6th day of April, 1892, and an order of the Supreme Court substituting Hiram S. Bradley as executor, etc., of Erastus Robinson, deceased, in the place of said Erastus Robinson, deceased, as a plaintiff in such action, entered in the office of the clerk of Otsego county on the 20th day of September, 1892, and also from an order

of the Supreme Court made on March 7, 1893, confirming the report of the referee and ordering judgment herein.

This was an action to foreclose a mortgage dated September 21, 1861, and duly recorded on the twenty-sixth of October following, given to the predecessors of the plaintiffs by Daniel Lamb and Alanson Lamb, his son, who were at the time tenants in common of the mortgaged premises, each owning an undivided half thereof. Said mortgage, and the bond of even date, to which it was collateral, were conditioned for the payment of the sum of $826, in four equal annual payments, with interest on the unpaid principal, payable on the twenty-first day of September in each year.

Alanson Lamb died on the 23d day of April, 1870, intestate and unmarried, leaving the defendant Mary Lamb as his only heir at law. On the 7th of January, 1871, Daniel Lamb conveyed to one George W. Palmer an undivided half of a part of said premises, known as the North house and lot, and on the same day Mary Lamb, who was then an infant, by Edward N. Griswold, her special guardian, conveyed to said Palmer the other undivided half of said portion. No mention of said mortgage was made in either conveyance, each of which was given for "a full consideration," with covenants of warranty. July 4, 1874, said Palmer conveyed said north part to the defendant Clarissa Waterman, by warranty deed, without reference to the mortgage, and she still remains the owner of the same.

Daniel Lamb died intestate on the 1st of August, 1872, owning an equity of redemption in an undivided half of the rest of the premises, known as the South house and lot, and leaving as his only heirs at law and next of kin one Lucinda Lamb, now deceased, and the defendants Mary Lamb and Harriet Robinson. June 4, 1883, Harriet Robinson, Lucinda Lamb and Mary Lamb conveyed to one Andrew Shaw a small portion of the mortgaged premises, in consideration of the sum of fifty dollars, the full value thereof, and the plaintiffs released the same from the lien of said mortgage. Lucinda Lamb died intestate, November 8, 1887, leaving as her only heirs at law and next of kin the said Mary Lamb and Harriet Robinson, who thereupon became and still are the owners of the equity of redemption in the South house and lot, which was worth the sum of $1,500. The value of the North house and lot did not appear.

The interest on the principal of the mortgage was paid in full to September 21, 1865, but no other payment, either of principal or interest, has since been made thereon by anyone, except that on the 8th of August, 1885, the sum of one dollar was paid to the plaintiffs, or their predecessors in title, by Lucinda Lamb, on behalf of herself, Mary Lamb and Harriet Robinson, in their presence, with their approval, and in recognition of the mortgage lien. The defendant Clarissa Waterman has never recognized the existence of the mortgage in any manner. The whole amount unpaid upon said bond and mortgage on the 20th of February, 1893, was the sum of $2,300.56. This action was commenced on the 13th of January, 1891. No personal representative of the estates of Daniel, Alanson or Lucinda Lamb, has ever been appointed. Judgment was rendered in favor of the plaintiffs for the foreclosure of the mortgage for the amount unpaid thereon.

*E. M. Harris*, for appellant Waterman.

*James W. Tucker* and *George Brooks*, for appellants Lamb and Robinson.

*Lynn J. Arnold*, for the respondents.

VANN, J. :

The main question presented by this appeal is whether a payment upon a bond and mortgage, made after a part of the land covered thereby had been conveyed without mention of the mortgage, by one who inherited the mortgaged premises from the deceased mortgagor, prevents the Statute of Limitations from running in favor of the grantee.

It has been held by the Court of Appeals of this State and by the Supreme Court of the United States that a partial payment made by the mortgagor himself, even after he has conveyed away the premises, arrests the operation of the statute, as to both grantor and grantee. (*New York Life Ins. & Trust Co.* v. *Covert*, 6 Abb. Pr. [N. S.] 154; *Hughes* v. *Edwards*, 9 Wheat. 489, 492. See, also, *Barrett* v. *Prentiss*, 57 Vt. 297.) This is upon the ground that as the grantee of the equity of redemption takes his title subject to the lien of a mortgage, duly recorded, he has constructive knowledge of the existence of the debt and of the power of the

mortgagor to prevent the exoneration of the land through the presumption of payment arising from lapse of time, by making partial payment or written acknowledgment. As payment is simply evidence from which an intent to renew the original promise may be inferred, it has been held that a payment which is to operate as a new promise must be made by the debtor himself, or by his agent duly authorized to make the acknowledgment, or to do for him the act which is to be the evidence of the new promise. (*Littlefield* v. *Littlefield,* 91 N. Y. 203, 209; *Smith* v. *Ryan,* 66 id. 352; *Miller* v. *Magee,* 17 N. Y. St. Repr. 547, 549; *Kelley* v. *Weber,* 27 Hun, 8.)

The heirs of a mortgagor are not his agents, nor do they stand upon the same basis that he did with reference to the debt secured by the mortgage. The debt represented by the bond is for the mortgagor to pay. He can renew it, and, in so doing, renew the lien of the mortgage which was collateral thereto, even after he has parted with his interest in the premises. But after his death, what is the obligation of his heirs in respect to a bond given by him? Clearly their promise to pay his debt without some consideration moving to them would be a *nudum pactum* and void, even if, as in the case before us, the evidence of debt was a bond purporting to bind the mortgagor himself, his heirs, executors and administrators. One, therefore, who sustained simply the legal relation of heir to the deceased mortgagor, but who had actually inherited nothing from him, could not bind himself to pay the bond by a promise without consideration. As partial payment is only evidence of a promise to pay the remainder of the debt thus recognized, such a payment, when there is no obligation to pay and no interest to protect, can have no more binding effect than an actual promise without consideration. When, however, the heirs have inherited the mortgaged premises, or even a portion thereof, from the mortgagor, and they have accepted the inheritance, how then do they stand with reference to the debt of their ancestor? Whatever the rule was at common law, it is now provided by statute, that "whenever any real estate subject to a mortgage executed by any ancestor or testator, shall descend to an heir, or pass to a devisee, such heir or devisee shall satisfy and discharge such mortgage out of his own property, without resorting to the executor or administrator of his ancestor, unless there be an express direction in the will of such testator that

such mortgage be otherwise paid." (1 R. S. 749, § 4; 4 id. [8th ed.] 2461.) Under this statute, it has been held that the obligation of the heir to pay the mortgage is measured by, and may not exceed the value of the property which descended to him, including lands other than the mortgaged premises. (*Hauselt* v. *Patterson*, 124 N. Y. 349.) If the heir has conveyed any part of the land, the obligation to pay becomes personal to the extent of its value, otherwise it is in the nature of an obligation either to pay or to lose the entire inheritance. (Id.)

No question is raised on this appeal as to whether the persons making the payment or new promise would be personally liable for any deficiency, as judgment was not rendered against them to that extent, nor was it rendered against anyone, except for the enforcement of the lien of the mortgage. Whether payment by the administrator would revive as to the heir, or *vice versa*, is not here material, as no personal representative of either mortgagor has been appointed.

A promise to pay by the heir in possession of the mortgaged premises, or of a part thereof, would have the support of a sufficient consideration when, as in this case, it was necesssary in order to prevent lawful dispossession through the process of foreclosure. An actual promise to pay the bond, made by the heir in proper form, upon such a consideration, would adopt the debt and make it his own. (*Tighe* v. *Morrison*, 116 N. Y. 263; *Smart* v. *Smart*, 97 id. 559; *Mallory* v. *Gillett*, 21 id. 412.)

So, where the heir had conveyed a part of the land, and had received payment therefor, as in the case before us, he would be personally liable to the owner of the bond and mortgage to that extent, and this also would constitute a sufficient consideration to support his promise to pay the debt. (*Hauselt* v. *Patterson, supra.*) The payment in question, therefore, was evidence from which the inference is permissible that such a promise was made. Partial payment, based upon a lawful consideration, has no other effect upon the remainder of the debt, under any circumstances, according to the authorities. (*Harper* v. *Fairley*, 53 N. Y. 442, 444.) Aside from extinguishing the debt *pro tanto*, it renews the remainder, at least as to the person making the payment and thereby acknowledging and promising to pay it. While the statute now provides

that an actual acknowledgment, or formal promise in terms, must be in writing, it expressly says that this does not alter the effect of a payment of principal or interest. (Code Civ. Proc. § 395.) A payment of part, therefore, is still evidence of a promise to pay the remainder. But whom does the payment or promise bind? Does it affect anyone except the person making it, or does it keep the security alive as to all persons? Lord CRANWORTH answered this question in *Roddam* v. *Morley* (1 De G. & J. 1), by saying that " when a part payment, or payment of interest, has been made, which has the effect of preserving any right of action, that right will be saved not only against the party making the payment, but also against all other parties liable on the specialty." The learned judge added that as the statute does not restrict the effect of payment, the court cannot restrict it. It was held in that case that payment of interest by the tenant for life of a devised estate, keeps a specialty alive as to the persons entitled to the remainder.

Mr. Jones, in his work on Mortgages (4th ed., vol. 2, § 1202), says : " A purchaser with actual notice of the mortgage, or constructive notice by means of a registry, can avail himself of the presumption of payment from lapse of time only when the mortgagor could avail himself of it under the same circumstances. The grantee succeeds to the estate and occupies the position of his grantor. He takes subject to the incumbrance, and his title and possession are no more adverse to the mortgagee than was the title and possession of the mortgagor. The purchaser is bound by the acts and declarations of the mortgagor, in respect to the mortgage, while he retains the equity of redemption or any part of it ; as, for instance, the purchaser of a part of the mortgaged premises cannot claim a presumption of payment of the mortgage from lapse of time when this presumption is repelled by payments of interest made by the mortgagor within twenty years, or by his admission within this time that the mortgage was then subsisting. * * * The record is notice of the mortgage to a subsequent purchaser, and the mere fact that he has had actual possession under his purchase for the statute period of limitation is no bar to a foreclosure of the mortgage."

In *Pears* v. *Laing* (L. R. [12 Eq.] 41), it was held that payment by one interested in the general residue of the real and personal estate of the ancestor, although not otherwise interested in the land

covered by the mortgage upon which the payment was made, was sufficient to keep the debt alive and was binding upon all persons interested either in the mortgaged property or in the general estate, which was liable for repayment by reason of a covenant. This case was carefully considered, and although, like all the modern English cases, it was dependent to some extent upon a statute, the reasoning applies directly to the case in hand. If payment is effective when made by one interested in a fund out of which the mortgage is payable, it must be equally effective when made by one interested in land out of which the mortgage is payable. ·

In *Moller* v. *Duryee* (21 Wkly. Dig. 458), it was held that payment upon a mortgage debt by the executor of the mortgagor kept the mortgage alive as against a grantee of the mortgagor. So, we think, that payment upon a mortgage made by the heirs of two joint and several mortgagors, while in possession of a part of the mortgaged premises inherited from those who gave the mortgage, keeps it alive as to a person holding the rest of the land by grant from one of the mortgagors and from the heirs of the other. Such a payment is not made by a stranger, but by those having, so to speak, a legal hand to pay with, for if the payment had not been made they might have lost their land. They were interested, because they paid to protect their title and possession. It was furthermore their duty to pay, under the statute quoted above, if they retained possession of any part of the mortgaged premises, and also to the extent of the value of such portion as they had conveyed. This duty to pay not only relieves the payment from the imputation of having been made by volunteers, but also furnishes an adequate consideration. As payment by a mortgagor, after conveying, binds his grantee, so far as the lien of the mortgage is concerned, so payment by the heir, after it had become his duty to pay, should have the same effect.

This is the logical result of the decisions already referred to, made by the highest courts, which work out exemption from the statute through the recording of the mortgage and constructive notice to the purchaser, who is warned in advance by the Recording Act of the consequences that he may have to face, taken in connection with that other line of decisions which make payment evidence of a new promise. Whether it revives the debt to the extent of making any-

one personally liable, we do not decide, as that question is not before us ; but we simply hold that it revives the lien of the mortgage as to all lands covered thereby, including those conveyed both by the mortgagors and their heirs.   As the grantee would have been bound if she had made the payment herself, so she is bound, though perhaps to a less extent, when it is made by one whose duty it was to pay.   This conclusion makes it unnecessary to consider the position of the respondents based upon section 403 of the Code of Civil Procedure.

After considering all of the questions to which our attention has been called, we are of the opinion that the judgment and orders appealed from should be affirmed, with costs.

HARDIN, P. J., concurred ; MERWIN, J., dissented.

Judgment and order affirmed, with costs.