(6 Misc. Rep. 553.)

### PORTER v. FRAZER et al.

(Supreme Court, Special Term, Niagara County. November, 1893.)

PLEDGE—RIGHT OF PLEDGEE TO SELL.

Where a bond and mortgage having several years to run are assigned as collateral security for a loan due in three months, but the assignment does not provide for a sale of the security, the lender, on maturity of the loan, may sue in equity to procure a sale.

Action by Peter A. Porter, as receiver of the Cataract Bank, against Washington A. Frazer, Jennie R. Frazer, and John J. Frazer, to foreclose a lien and obtain the sale of a bond and mortgage that had been assigned to the bank as collateral security for the payment of a note. Judgment for plaintiff.

Ely & Dudley, for plaintiff.

Elsworth, Potter & Storrs, for defendants.

WARD, J. Prior to July 3, 1893, the Cataract Bank was a state bank located at Niagara Falls, N. Y. On that day the plaintiff was

appointed receiver of this bank by a judgment of this court in an action brought by the people to dissolve the corporation, and he is still such. On the 29th of March, 1893, the defendant Washington A. Frazer made his promissory note, payable at the bank, for the sum of $8,000 due in three months, and the defendant Jennie R. Frazer indorsed this note, for the purpose of obtaining a loan from the bank of the amount of the note to Washington A. Frazer. At the time of the execution of this note Washington A. Frazer was the owner of a bond and mortgage executed by the defendant John J. Frazer to him, bearing date the 6th day of January, 1891. The bond was in the penal sum of $16,000, and was conditioned for the payment of $8,000 in 5 years from its date, together with annual interest, and contained a provision that if default was made in the payment of principal or interest, taxes, assessments, or insurance for the space of 30 days, the whole sum thereby secured would become due; and the obligor was required to pay the taxes, and to insure against loss or damage by fire, etc. The mortgage was in the usual form, given to secure the payments provided in the bond, and covering and describing two parcels of real estate in the city of Lockport, and was recorded in Niagara county. The bank, in addition to the indorsement of Jennie R. Frazer, required collateral security for the payment of this note of Washington A. Frazer, who thereupon, and for the purpose of giving such security, by an instrument in writing under his hand and seal, duly acknowledged, "sold, assigned, transferred, and conveyed" to the bank the said bond and mortgage, describing them, and covenanted that there was unpaid and to become due on the same the sum of $8,000, with interest thereon from the 6th day of January, 1893, and concluded with this provision:

"This assignment is made as a continuing and collateral security for the payment at maturity of a certain note of $8,000.00, given by the party of the first part [Washington A. Frazer] to Jennie R. Frazer, and indorsed by the said Jennie R. Frazer to the Cataract Bank, which note is dated March 29, 1893, and payable three months after date at the Cataract Bank, Niagara Falls, New York, and for any and all renewals of said note."

The date of this assignment and its acknowledgment was March 29, 1893. This assignment and the bond and mortgage were delivered to the bank, and are now held by the receiver. John J. Frazer at this time was the owner and occupant of the premises described in the mortgage, and has continued to be, and there is no difficulty in locating the property mortgaged, nor ascertaining its value. When the $8,000 note became due it was not paid, but was protested for nonpayment, and has not been paid, nor any part thereof. All of the defendants were served in this action, and therefore had notice of the relief sought therein. The complaint in this action sets forth the facts, and demands judgment that the bond and mortgage be sold upon such terms as the court may deem just, and the proceeds of the sale applied in payment of the note after deducting the costs and expenses of the action and the sale, and that Washington A. Frazer be barred and foreclosed of all title or interest in the bond and mortgage, and that the plaintiff have

judgment against Washington and Jennie for any deficiency that there may be after applying the proceeds of the sale as aforesaid.

The learned counsel for the defendants contends that the transaction of the assignment of this bond and mortgage as collateral security was a pledge. This position seems to be conceded by the counsel for the plaintiff. Whether it be a pledge or not is perhaps not very important to determine here, for the reason that in equity the substance of things is sought in administering relief, and names are unimportant. The question is whether, upon the facts stated, the plaintiff is entitled to any relief, and, if so, what? The defendants further contend that, as there was no express authority given by the agreement to assign the bond and mortgage as collateral security for the bank to sell the bond and mortgage, it cannot do so, nor has the court the power to direct that this be done, but the plaintiff must await the maturity of the securities, or their becoming due by reason of failure to perform a condition embraced therein, and then the plaintiff's remedy is to collect on the securities themselves, and that is his only remedy; and the defendants cite in support of that contention: Wheeler v. Newbould, 16 N. Y. 392; Miller v. Magee, (Sup.) 2 N. Y. Supp. 156; Haskins v. Kelly, 1 Rob. (N. Y.) 160; Lary v. Trust Co., 4 N. Y. Wkly. Dig. 56.

The facts in the first case cited (Wheeler v. Newbould) were these: On November 6, 1848, the defendant loaned to the plaintiffs $2,000 for the space of 44 days. The plaintiffs, as collateral security for the payment thereof and $4 a day interest, deposited with him promissory notes and drafts for the payment of money given by various persons, and becoming due in about 6 months, to the amount of $2,614.73. At the expiration of the 44 days, the loan not being paid, the defendant gave the plaintiffs notice that unless they paid the loan he should sell the collaterals for the best price he could obtain, according to the usual custom and course of business in New York city, and reimburse himself. The loan not being paid, the defendant, on the 28th of December, 1848, sold the notes and drafts at private sale, for the sum of $2,020. The action was to have this sale declared void, and for the defendant to account for the value of the securities received. It will be observed that there was no notice given of the time or place of the sale, no sufficient opportunity given to redeem the pledge by the pledgor, the sale was not public, but the whole proceeding was most unjust and arbitrary, and was substantially a conversion of the property by the pledgee. The plaintiffs succeeded in the trial court, and also upon appeal to the general term and the court of appeals, and the question before the court was simply whether this sale could be sustained in equity. It is surprising that any one should have contended that it could. The court of appeals (16 N. Y., at page 396) say:

"The primary, and indeed the only, purpose of the pledge is to put it in the power of the pledgee to reimburse himself for the money advanced when it becomes due and remains unpaid. The contract carries with it an implication that the securities shall be made effectual to discharge the obligation.

\* \* \* It has been supposed by some writers that to justify such a sale it was indispensable that it should be under the decretal order of some court, upon the application of the creditor; but, although the creditor was at liberty to make such an application, it does not appear that he might not act in ordinary cases without any such judicial sanction, after giving proper notice of the intended sale. \* \* \* It is not a fixed and inflexible condition, annexed to every pledge, that the creditor may resort to a sale in all cases where there is a pledge because the manner in which he is to reimburse himself may depend upon the terms of the contract, or be inferred from the character and condition of the property pledged." Id. 397.

After laying down these sound and sensible propositions, the court proceeds to show that the sale of goods, merchandise, and personal chattels after notice by the act of the pledgee is proper, and adds: "But where choses in action for the payment of money, notes, bills, bonds, and mortgages are the subject of the sale, the case is widely different, and the reason given is that this species of property has no intrinsic value of which one person may judge as well as another;" and the court concludes that the sale of these notes and drafts was invalid, and takes the position, in effect, that the proper course for the pledgee to have taken was to have waited until the notes and drafts were due, and collected them in the usual manner, and applied the proceeds in payment of the debt secured. This last position seems to have been advisory and obiter. It was not necessary for the determination of the case before the court; and if the court intended to state that in all cases this was the exclusive remedy of the creditor it was not consistent with the position plainly intimated, before quoted, that the creditor might go into a court of equity, and have a sale of the pledge decreed. The position, also, that bonds secured by mortgages put up as collateral must be treated the same as commercial paper that has only the responsibility of the maker behind it, was also obiter. It cannot be said that a bond secured by a mortgage upon real property has no intrinsic value, and that the only value of such instruments is the responsibility of the persons executing them; on the contrary, their value can be ascertained as certainly as that of a cow or a horse. When the value of the real estate upon which the mortgage is a lien is known, the value of the security is known; and in making a sale of it the purchaser can buy this security as intelligently as if he were buying any other chattel, and there is no more danger of sacrifice at the sale of this kind of property than any other; and where the sale is by judicial decree, and full opportunity is given the purchaser to redeem, and full notice of the sale, all the objections raised to the sale of commercial paper in this and kindred cases of the collateral security before it has matured disappears. In many cases which appear in the books this case of Wheeler v. Newbould has been cited as authority for the position that the same rule is to be applied to bonds and mortgages as to commercial paper, and hence the doctrine has crept into the books as the authoritative decision of the court of appeals without due consideration. In none of the cases cited by the counsel did the pledgee attempt to foreclose his pledge by action, but they were

all cases where, by the act of the party alone, the sale was accomplished or attempted.　In Miller v. Magee, supra, the collateral was a life insurance policy, assigned as security for the payment of a note which was simply an obligation to pay money at the death of the insured.　The case of Haskins v. Kelly, supra, does not aid us.　That went off on the question as to whether the property was a pledge and was satisfied by a tender mainly.　The case of Lary v. Trust Co., supra, was where an injunction was obtained restraining the pledgee from selling $100,000 of bonds of a railroad.　The court held they were mere choses in action, and that their sale by the mere act of the pledgee would be restrained.　It is conceded by the defendant that if there had been an express authority to sell this bond and mortgage, they could be sold by the act of the bank, upon due notice, without a resort to equity.　An authority to sell may be implied from the transaction itself and the presumed intent of the parties.　Bank v. Thompson, 133 Mass. 482; Wheeler v. Newbould, supra.　It was held in King v. Insurance Co., 58 Tex. 669, that, in the absence of an agreement to the contrary, a pledgee may sell the pledge at public auction, after default and reasonable notice, and, if the pledgor asserts the existence of an agreement, he must show it.　See, also, Railroad Co. v. Burke, 22 Grat. 254.

At the time this collateral was assigned the bond and mortgage had about two years and nine months to run before maturity.　The debt for which it was given as collateral matured in three months, so that if the bank had to wait, before it realized on its collaterals, until they were due, the security could not be made available until the expiration of two years and a half.　Was it within the contemplation of the parties that this large sum of $8,000 was to remain unpaid two years and six months after it became due in case it was necessary to resort to the collaterals for its payment?　Such a conclusion is not consistent with business affairs or the natural and known conduct of business men.　To my mind, the inference is irresistible that it was within the intention of the parties that this security was to be made available through the proper methods, upon default in the payment of the $8,000 note; and, as no action could then be maintained to foreclose the said bond and mortgage, the only remaining remedy was to sell the bond and mortgage and realize upon them; and that is the purpose of this action.　A distinction may well be drawn, even in the case of commercial paper, between collateral securities shortly to mature and those having a long time to run.　In the first case it may be assumed that the parties intended that the holder should realize upon the collaterals themselves by their collection when due; in the other case, that the holder should realize by a sale of the collaterals.　And it was expressly held in Richards v. Davis, reported in 5 Pa. Law J., at 471, that a pledgee of a note, which is not to mature until long after the principal debt, has implied authority, on default, to sell the note, and that he need not wait to collect it.　And see, also, on this subject, Brightman v. Reeves, 21 Tex. 70; and see Potter v.

Thompson, 10 R. I. 8. And in Donahoe v. Gamble, 38 Cal. 340, an action of foreclosure and sale of a past-due negotiable note, pledged, was sustained, the maker being a nonresident, and having no property in the state.

The power of a court of equity to decree a sale of the pledge under proper circumstances does not seem to be seriously questioned in any of the cases; indeed, the jurisdiction is asserted in many. Jones on Pledges (at section 640) lays down the principle that—

"A pledgee may properly enforce his lien by a bill in equity, especially when the contract of pledge neither provides for the time of redemption nor the manner and time of sale, and his rights or powers are in any manner questioned or denied. This remedy is more complete than the common-law right to sell the pledge after notice. The pledgee thereby relieves himself from ulterior questions as to the propriety of his course, and the court can act with due regard to the rights of all parties concerned."

And see Bank v. Hall, 18 Hun, 176, (which was an action to foreclose a lien upon shares of stock,) affirmed 83 N. Y. 338; Story, Eq. Jur. 1008; 2 Kent, Comm. 582.

A court of equity appointing a receiver to take possession of property pending a litigation concerning the rights of the parties thereto is vested with the power of selling the property in the receiver's hands whenever such course becomes necessary to preserve the interests of all the parties. High, Rec. § 192. And see Crane v. Ford, Hopk. Ch. 114; Smith v. Danzig, 3 Civ. Proc. R. 127. And the power is given to a temporary receiver by section 1788 of the Code of Civil Procedure to sell or otherwise dispose of the property of which he is the receiver when directed by the court. Certainly the powers of a permanent receiver and the power of a court to direct a sale as to him cannot be less than in case of a temporary receiver.

It is the duty of the plaintiff to close up his receivership, and distribute the property under the judgment annulling the corporation, without any delay further than that which is absolutely necessary; and, in order that he may do so, the court should assist him by all proper orders. If the contention of the defendants is sustained, there is no method of closing up this receivership, so far as this large claim is concerned, under two years and a half or three years. Such a result (if possibly consistent with the rights of the parties) should be avoided. I think the plaintiff must have the judgment demanded, under such conditions and restrictions as will fully protect the rights of the pledgor. Let judgment be entered for the plaintiff for a sale of the bond and mortgage in the same manner and upon the same notice that real estate is required to be sold upon execution by the sheriff of the county of Niagara, which sale shall not be less than 60 days after service of a copy of the judgment herein upon the defendant Washington A. Frazer, and he shall be permitted to redeem said bond and mortgage at any time prior to such sale, upon the payment of the sum for which it was pledged, and the costs and disbursements of this action. The plaintiff should recover costs in this action against the defend-

ants Washington A. Frazer and Jennie Frazer; and, should there be a sale, and any deficiency thereon, judgment to go against said Washington A. Frazer and Jennie Frazer for such deficiency.

